Dolores Cordero Carrete, Plaintiff and Appellee, *v.* Juan Lastra Charriez et al., Defendants.—Lastra Charriez, Appellant.

No. 3782. Argued November 16, 1927.—Decided May 24, 1929.

*Luis Llorens Torres* and *Alfonso Lastra Charriez* for the appellant.. *González Fagundo & González Jr.* for the appellee.

Mr. Justice Aldrey delivered the opinion of the court.

This appeal was taken by the defendant from a judgment which ordered him to close certain windows directly overlooking the house of the appellee, to destroy a balcony and to remove a corbel and a drainage pipe. In support of his plea for reversal the appellant alleges that the lower court erred in overruling his demurrer on the ground that the complaint did not adduce facts sufficient to determine a cause of action because no allegation was made of the distance between the house of the appellant and that of the appellee, as required by the provision of section 589 of the Civil Code that windows with direct views, or balconies or any similar openings projecting over the tenement of a neighbor shall not be made if there is not a distance of two meters between the wall in which they are built and the said property.

There is no such defect in the complaint, for it is alleged

therein that the defendant had built his house of two stories on the boundary line between his lot and the plaintiff's property and therefore without having left a space of two meters between his house and the plaintiff's lot. What the law requires is not the distance between the buildings, but two meters between the wall in which the openings are made and the boundary of the adjoining property, the purpose being to prevent inspection of the adjoining property at a less distance than the two meters fixed by the code.

The second ground of appeal is that the court erred in rendering judgment for the plaintiff.

It results from the evidence that in the first part of the year 1924 the defendant and appellant erected a two-story building with its wall adjoining the property of the appellee and on the dividing line between the lots of the two parties, the wall having several windows, a balcony, a corbel and a drainage pipe; that as the plaintiff's mother was the owner of the adjoining property, which belongs now to the appellee and on which there is a house, she signed in favor of the appellant the following private agreement: "I hereby authorize Dr. Juan Lastra Charriez to obtain light and air for his property on the west side of my property and east of that of Dr. Lastra in which there is an alley about three meters wide. For this purpose I sign the present in Caguas on February 26, 1924. Elisa C. de Cordero, Dr. J. Lastra Charriez." It appears that in order to obtain that permit the appellant, according to his testimony, told the owner at the time that the health department required a written permit from her authorizing the opening of windows, otherwise no building permit would be issued, and that she then voluntarily directed her daughter to typewrite the permit which she signed; that in September of 1924 the plaintiff bought the house from her mother and had the deed recorded in the registry of property from which no servitude appears as a lien on said house in favor of the property of the appellant; that the defendant and his witness Justo Casablanca testified

that the aforesaid permit was typewritten by the plaintiff, but her mother and another daughter called Carmen testified at the trial that plaintiff Dolores Cordero Carrete did not write the permit because she can not work a typewriter and because at that time she was spending a few days away from home, but that the permit was written by Carmen, who is a stenographer.

Undoubtedly the appellant has no right that his property have lights and views over that of the appellee at a less distance than two meters from the dividing line between them, unless he had acquired that right by prescription of twenty years, which is not alleged and does not exist in this case, or by title, because those which are the object of this suit are continuous and apparent. Consequently, let us see whether there exists a title constituting such servitudes in favor of the appellant and against the appellee.

The title of servitude is the juridical act which creates them, that is, the contract whereby the servitude is constituted, which, as every contract, must unite the three requisites of consent, object and consideration. This being established, let us see whether the permit relied on by the appellant in his defense lacks any of the above requisites.

A reading of the document by which the servitude is alleged to have been created is sufficient to show that no consideration is therein set forth for the then owner of the house which now belongs to the appellee to bind and submit her tenement to a real servitude in favor of the tenement of the appellant; and although section 1244 of the Civil Code provides that even though the consideration should not be expressed in the contract, it is presumed that it exists and that it is licit, unless the debtor proves the contrary, a presumption *juris tantum* also established in subdivision 38 of section 102 of the Law of Evidence, yet we find that it appears from the testimony of the appellant at the trial that for the constitution of a continuous lien by the document under review there was no price, remuneration or consideration for the

then owner of the property which had to bear the servitude in favor of the property of the appellant, since the appellant said that when he told the mother of the plaintiff that the health department would not let him build unless he had authorization from her to open windows, she voluntarily—and this might be construed that there was no consideration—consented to grant the permission. Moreover, no perpetual grant or for a definite time is made to the appellant of the right to light and view in that document and therefore it is simply a permit revocable at will by the grantor or by her successor in ownership, as held in *Torres* v. *Plazuela,* 23 P.R.R. 451, where it was said: "When there is no lawful consideration for a servitude or right of way and the owner of the servient tenement has received no benefit therefrom, the fact that he has consented thereto does not imply that he has forever renounced his absolute ownership." That doctrine was ratified in *Colón* v. *Plazuela Sugar Co.,* 31 P.R.R. 299, whose syllabus reads as follows: "A mere verbal permit given by the owner of a property to the agents of a sugar factory to lay private railroad tracks on the property for the transportation of sugar cane, without consideration, or time limit, or conditions, does not warrant a conclusion that a permanent servitude of right of way was created on the property in favor of the sugar factory." A similar rule was applied in *Almodóvar* v. *Russell & Co.,* 34 P.R.R. 90. The case of *Gaztambide* v. *Guánica Centrale,* 26 P.R.R. 724, cited by the appellant in support of his appeal, is not applicable here because in that case there was consideration for the grant of the right of way, whereas in this case there is no consideration or remuneration and therefore it has no binding effect.

Even supposing that that document had a binding effect and constituted a title of servitude, it could not prejudice the appellee because it is neither recorded in the registry of property, supposing it could be recorded as a private instrument, nor has it been proved that the present owner acquired the property with knowledge of the servitude.

The last error alleged refers to the dismissal of the counterclaim of the defendant on the ground that the prosecution of this action caused him damages and cost him money for travel, services of an attorney and absence from his office. But that alleged error was not argued by the appellant who limited himself to saying that his counterclaim had been proved by his testimony. Since the lower court held that he had no right to the servitude which he was using, he is not entitled to recover expenses or damages.

The judgment appealed from must be affirmed.

Mr. Justice Hutchison concurred in the judgment.

Mr. Justice Texidor took no part in the decision of this case.